IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| **WINDY CITY INNOVATIONS, LLC,** § § | | |
| **Plaintiff,** § § | | |
| v. § § | Civil Action No. 1:15-cv-103 | |
| **MICROSOFT CORPORATION,** § § | | |
| **Defendant.** § § | **JURY TRIAL DEMANDED** | |

### PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Windy City Innovations, LLC ("Windy City") files this Original Complaint against Defendant Microsoft Corporation ("Microsoft") for patent infringement under 35 U.S.C. § 271 and alleges, based on its own personal knowledge with respect to its own actions and based upon information and belief with respect to all others' actions, as follows:

### THE PARTIES

1.      Plaintiff Windy City is a limited liability company organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 195 North Harbor Drive, Suite 5403, Chicago, Illinois 60601.

2.      Defendant Microsoft Corporation is a corporation organized under the laws of the State of Washington, with its headquarters at 1 Microsoft Way, Redmond, Washington 98052-6399.  Microsoft is registered to conduct business in the State of North Carolina.  Microsoft has designated Corporation Service Company, 327 Hillsborough St., Raleigh, North Carolina 27603 as its agent for service of process.

## JURISDICTION AND VENUE

3. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Microsoft, because, among other things, Microsoft has committed acts of patent infringement and/or has induced and contributed to acts of patent infringement by others in North Carolina, including in this district, and has engaged in continuous and systematic activities in North Carolina, including the operation of one of Microsoft's largest U.S. facilities located at 8055 Microsoft Way, Charlotte, North Carolina 28273.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) because, among other things, Microsoft is subject to personal jurisdiction in this district, Microsoft has regularly conducted business in this judicial district, Microsoft has a regularly established place of business in this judicial district at 8055 Microsoft Way, Charlotte, North Carolina 28273, and certain of the acts complained of herein occurred in this judicial district.

## PATENTS-IN-SUIT

6. On March 26, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,407,356 (the "'356 patent") entitled "Real Time Communications System." A true and correct copy of the '356 patent is attached hereto as Exhibit A.

7. On June 4, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,458,245 (the "'245 patent") entitled "Real Time

Communications System."  A true and correct copy of the '245 patent is attached hereto as Exhibit B.

8.     On June 25, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,473,552 (the "'552 patent") entitled "Communications System."  A true and correct copy of the '552 patent is attached hereto as Exhibit C.

9.     On April 8, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,694,657 (the "'657 patent") entitled "Real Time Communications System."  A true and correct copy of the '657 patent is attached hereto as Exhibit D.

10.    By assignment, Windy City owns all rights, title, and interest in the '356, '245, '552, and '657 patents (the "patents-in-suit") and possesses all rights of recovery.

## FACTUAL ALLEGATIONS

11.    The patents-in-suit generally cover a real time communications system for managing and facilitating communication of digital data, including different media types, across networks.  The patents-in-suit also generally cover a computer network (i.e., a server network) that arbitrates permissions and distribution of multimedia information messages utilizing, for example, an application program interface ("API").

12.    In or around the year 1996, Daniel Marks, the inventor of the patents-in-suit, was hired by executives at American Information Systems and asked to develop a communications system for employees at American Information Systems to more easily communicate and share various types of information over the Internet.

13.    Daniel Marks thereafter designed and developed a computerized communications system with software that, *inter alia*, creates a virtual connection among

individual computers via the Internet, permits access to the connection in accordance with predefined rules (e.g., user identity), arbitrates communications in accordance with predefined rules, and provides an application programming interface multiplexing and demultiplexing communications by message type.

14. Daniel Marks is the named inventor on six patents claiming various aspects of his inventions. For example, some embodiments feature a controller computer that arbitrates communications between participator computers, using predefined rules and parameter, such as user identities and censorship settings. As another example, some embodiments feature a controller computer with an application programming interface that multiplexes and demultiplexes messages and creates a virtual connection between, for example, channels, private messages, and multimedia objects between the controller computer and participator computers. As yet another example, some embodiments feature a controller computer that facilitates communication of digital data between participator computers by using, for example, authenticated user identities and pointer-triggered messages to fetch digital communication data.

15. In addition to his involvement with Windy City, Daniel Marks currently serves as an Associate Research Professor in the Department of Electrical Engineering and Computer Engineering at Duke University in Durham, North Carolina.

16. Microsoft offers communications software products that provide for real-time communications over the Internet, including *inter alia*, instant messaging, online meetings, screen sharing, and voice and video calls.

17. On October 13, 2011, Microsoft acquired all of the issued and outstanding shares of Skype Global S.á.r.l. for approximately $8.5 billion. Microsoft now develops and

markets Skype.

18.     Microsoft owns and operates Skype products ("Skype"). Skype runs on a number of platforms including Microsoft Windows, Windows Phone OS, Windows Mobile OS, Microsoft Surface Tablets, Xbox, OS X, iOS, Linux, Android, BlackBerry, and Symbian. Skype offers functionality that enables Skype users to create and virtually connect to a network of contacts, share multimedia files with all or some of those contacts, establish private chat groups, customize privacy settings, and communicate in real time via Skype's chat, video chat, and messages functionalities.  Skype's chat, video chat, and messages features are real time communications systems for communicating different media types over the Internet, and also arbitrate permissions and distribution of multimedia information messages utilizing, for example, an application program interface (e.g., Microsoft's internal Skype APIs, Microsoft's Skype APIs for developers).  "Skype" refers collectively to the Skype website, Skype internet communication applications, client software (including, e.g., plug-ins, third-party applications, or helper applications), Microsoft's internal and developer Skype APIs, other Skype-branded hardware or software applications, servers and computers that are used to support the described functionalities, including facilitating Skype communications and virtual connections between Skype users, and includes any improvements, modifications, enhancements, fixes, updates, upgrades and future versions through trial.

19.     Microsoft offers an enterprise communications product that provides for real-time communications, including *inter alia*, instant messaging, online meetings, screen sharing, and voice and video calls.  Microsoft began offering this product in 2010 as Microsoft Lync, and today calls the product Skype for Business after integrating certain

5

Skype features.

20. Microsoft owns and operates Lync and Skype for Business products ("Lync" and "Skype for Business," respectively). Lync and Skype for Business run on a number of platforms including Microsoft Windows, Windows Phone OS, Windows Mobile OS, Microsoft Surface Tablets, OS X, iOS, Android, BlackBerry, and Symbian. Lync and Skype for Business offer functionality that enables Lync and Skype for Business users to create and virtually connect to a network of contacts, share multimedia files with all or some of those contacts, establish private chat groups, customize privacy settings, and communicate in real time via Lync and Skype for Business's chat, video chat, and messages functionalities. Lync and Skype for Business's chat, video chat, and messages features are real time communications systems for communicating different media types over the Internet, and also arbitrate permissions and distribution of multimedia information messages utilizing, for example, an application program interface (e.g., Microsoft's internal APIs for Lync and Skype for Business, Microsoft's Lync and Skype for Business APIs for developers). "Lync" refers collectively to Lync internet enterprise communication software applications, the Lync website, Lync Server, Lync Online, Lync client software (including, e.g., plug-ins, third-party applications, or helper applications), Lync Web App, Microsoft's internal and developer Lync APIs, other Lync-branded hardware or software applications, servers and computers that are used to support the described functionalities, including facilitating Lync communications and virtual connections between Lync users, and includes any improvements, modifications, enhancements, fixes, updates, upgrades and future versions through trial. "Skype for Business" refers collectively to Skype for Business internet enterprise communication software applications, the Skype for Business website, Skype for Business Server, Skype for

Business Online, Skype for Business client software (including, e.g., plug-ins, third-party applications, or helper applications), Skype for Business Web App, Microsoft's internal and developer Skype for Business APIs, other Skype for Business-branded hardware or software applications, servers and computers that are used to support the described functionalities, including facilitating Skype for Business communications and virtual connections between Skype for Business users, and includes any improvements, modifications, enhancements, fixes, updates, upgrades and future versions through trial.

21. Microsoft offers a home entertainment console called Xbox. Xbox provides for real-time communications, including *inter alia*, messaging, group chat, and voice and video calls. Xbox users can connect and communicate using applications and Xbox's online platform, Xbox Live. Skype functionalities have also been implemented in the latest release of the Xbox console.

22. Microsoft owns, sells, and operates Xbox products ("Xbox"). Xbox offers functionality that enables Xbox users to create and virtually connect to a network of contacts, share multimedia files with all or some of those contacts, establish private chat groups, customize privacy settings, and communicate in real time via Xbox's chat, video chat, and messages functionalities (including, e.g., Xbox Live and integrated Skype functionalities). Xbox's chat, video chat, and messages features are real time communications systems for communicating different media types over the Internet, and also arbitrate permissions and distribution of multimedia information messages utilizing, for example, an application program interface (e.g., Microsoft's internal Skype and Xbox or Xbox Live APIs, Microsoft's Skype and Xbox or Xbox Live APIs for developers). "Xbox" refers collectively to Microsoft's gaming consoles including Xbox, Xbox 360, Xbox One, Microsoft's Xbox Live

servers, Xbox Skype and chat or messaging applications, Xbox client software (including, e.g., plug-ins, third-party applications, or helper applications), Xbox Live software, the Xbox Live website, internal and developer Skype and Xbox or Xbox Live APIs, other Xbox-branded hardware or software applications, servers and computers that are used to support the described functionalities, including facilitating Skype and Xbox or Xbox Live communications and virtual connections between Xbox users via Xbox Live, and includes any improvements, modifications, enhancements, fixes, updates, upgrades and future versions through trial.

23.     Microsoft offers mobile tablet and/or laplet Surface devices ("Surface Tablets") and mobile Windows Phone/Mobile smartphones sold under either Microsoft or Nokia branding ("Microsoft Mobile Phones"). Surface Tablets and Microsoft Mobile Phones include Skype applications. Microsoft's end users can use the Skype application on Surface Tablets and Microsoft Mobile Phones to communicate and interact as described above for Microsoft's Skype functionalities. "Surface Tablets" refers collectively to Microsoft's tablet and laplet devices (e.g. Surface, Surface Pro, Surface 2, Surface Pro 2, Surface 3, and Surface Pro 3), Windows and Windows Mobile operating systems, the Skype application, chat and messaging applications, Surface client software (including, e.g., plug-ins, third-party applications, or helper applications), Surface-branded hardware and software applications, internal and developer Skype APIs, internal and developer Windows Mobile APIs, servers and computers that are used to support the described functionalities, including facilitating Skype communications and virtual connections between Surface Tablet users, and includes any improvements, modifications, enhancements, fixes, updates, upgrades and future versions through trial. "Microsoft Mobile Phones" refers collectively to Microsoft's mobile phone

8

devices (including, e.g., Lumia phones), Windows Phone and Windows Mobile operating systems, the Skype application, chat and messaging applications, Windows Phone and Windows Mobile client software (including, e.g., plug-ins, third-party applications, or helper applications), Microsoft, Nokia, or Lumia-branded hardware and software applications, internal and developer Skype APIs, internal and developer Windows Phone/Mobile APIs, servers and computers that are used to support the described functionalities, including facilitating Skype communications and virtual connections between Microsoft Mobile Phone users, and includes any improvements, modifications, enhancements, fixes, updates, upgrades and future versions through trial.

24.     Plaintiff approached Microsoft in 2000 to discuss licensing United States Patent No. 5,956,491 ("the '491 patent") and the continuing patent application that issued as the asserted '356 patent and that is also the parent application to the other patents-in-suit. The '491 patent and the asserted patents share a common specification. Plaintiff provided Microsoft with a copy of the '491 patent and the continuing patent application that issued as the asserted '356 patent. A copy of this initial communication is attached hereto as Exhibit E. After subsequent discussions between Plaintiff and Microsoft, Microsoft ultimately chose not to enter into a license or acquire the patents-in-suit. Microsoft thereafter continued development of its communications software products described above.

25.     The '491 patent, which shares a common specification with the asserted patents, was cited as prior art during the prosecution of patents owned by Microsoft, including U.S. Patent Nos. 7,512,655 and 6,424,994.

26.     Notwithstanding Microsoft's knowledge of Plaintiff's patent rights, Microsoft has committed and continues to commit acts of infringement under 35 U.S.C. § 271 with

Skype, Lync, Skype for Business, Xbox, Surface Tablets, and Microsoft Mobile Phones. In committing these acts of infringement, Microsoft acted despite an objectively high likelihood that its actions constituted infringement of at least one valid patent, and Microsoft actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of at least one valid and enforceable patent.

27.     Skype, Lync, Skype for Business, Xbox, Surface Tablets, and Microsoft Mobile Phones are collectively referred to as "Microsoft's Accused Instrumentalities."

## COUNT ONE: PATENT INFRINGEMENT BY MICROSOFT

28.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

29.     As described below, Microsoft has infringed and continues to infringe the patents-in-suit.

30.     Microsoft's Accused Instrumentalities meet claims of the patents-in-suit. For example, Microsoft includes or operates a controller computer that arbitrates communications between participator computers of end users (e.g., users of Skype, Lync, Skype for Business, Xbox, Surface Tablets, and Microsoft Mobile Phones), using predefined rules and parameters, such as user identities (e.g., accounts or account identifiers for Skype, Lync, Skype for Business, Xbox or Xbox Live, Surface Tablets, and Microsoft Mobile Phones, etc.) and censorship settings (e.g., blocked users, private chat settings, private groups, privacy settings, muted conversations, device capability restrictions, etc.). As another example, Microsoft includes or operates a controller computer with an application programming interface (e.g., Microsoft's internal and developer APIs for Skype, Lync, Skype for Business, Xbox / Xbox Live, and Windows Mobile) that multiplexes and demultiplexes messages and creates a

10

virtual connection between, for example, channels, private messages, and multimedia objects (e.g., private groups, private chats, group chats, video chats, messages with text, hyperlinks, video, audio, or graphics, etc.) between the controller computer and participator computers of end users. As yet another example, Microsoft includes or operates a controller computer that facilitates communication of digital data (e.g., text, hyperlinks, video, audio, or graphics, etc.) between participator computers of end users by using, for example, authenticated user identities (e.g., accounts or account identifiers for Skype, Lync, Skype for Business, Xbox or Xbox Live, Surface Tablets, and Microsoft Mobile Phones, etc.) and pointer-triggered messages (e.g., messages, including notifications, with URLs, IP addresses, or other location/address identifiers, etc.) to fetch digital communication data.

31. Microsoft makes, uses, offers to sell, sells and/or imports Microsoft's Accused Instrumentalities within the United States or into the United States without authority from Windy City.

32. Microsoft therefore infringes the patents-in-suit under 35 U.S.C. § 271(a) with Microsoft's Accused Instrumentalities.

33. Microsoft has actual knowledge of the patents-in-suit. Plaintiff approached Microsoft in 2000 to discuss licensing the '491 patent and the continuing patent application that issued as the asserted '356 patent and that is also the parent application to the other patents-in-suit. The '491 patent and the asserted patents share a common specification. Plaintiff provided Microsoft with a copy of the '491 patent and the continuing patent application that issued as the asserted '356 patent. After subsequent discussions between Plaintiff and Microsoft, Microsoft ultimately chose not to enter into a license or acquire the patents-in-suit. The '491 patent was also cited as prior art during the prosecution of patents

owned by Microsoft, including U.S. Patent Nos. 7,512,655 and 6,424,994.  Microsoft had actual knowledge of at least the '356 patent, and as a sophisticated entity and litigant, would or should have looked into the other patents-in-suit, which are publically accessible on the United States Patent and Trademark Office's website, to determine whether Microsoft, its developers, and its customers infringed them.  Microsoft also has actual knowledge of all patents-in-suit at least as of the filing of this Complaint for Patent Infringement.

34. Microsoft indirectly infringes the patents-in-suit by inducing infringement by others, such as end-users and application developers, because Microsoft, for example, instructs and/or requires these third parties to make, use, sell, offer to sell or import Microsoft's Accused Instrumentalities in or into the United States. Microsoft additionally indirectly infringes the patents-in-suit by encouraging, facilitating and instructing its users to use the inventions while they use Microsoft's Accused Instrumentalities.  Microsoft does this by, without limitation, modifying, in response to user actions, the configuration of user computers and devices and by encouraging users to use their computers and devices, so modified, to interact with Microsoft's Accused Instrumentalities, thereby inducing use of the claimed inventions.  Microsoft also provides APIs for use by application developers.

35. As outlined in paragraphs 24-26 and 33, Microsoft took the above actions intending to cause infringing acts by others.

36. As outlined in paragraphs 24-26 and 33, Microsoft was aware of the patents-in-suit and knew that the others' actions, if taken, would constitute infringement of those patents. Alternatively, Microsoft believed there was a high probability that others would infringe the patents-in-suit but remained willfully blind to the infringing nature of others' actions. Microsoft therefore infringes the patents-in-suit under 35 U.S.C. § 271(b).

37. Microsoft indirectly infringes the patents-in-suit by contributing to infringement by others, such as product assemblers, resellers, end-user customers, and application developers by providing, offering to sell, and/or selling within the United States products and hardware and software components for operating Microsoft's Accused Instrumentalities and interacting with end user client software and platforms. These products and hardware and software components constitute a material part of the inventions claimed in the patents-in-suit, and are used to practice one or more processes/methods covered by the claims of the patents-in-suit. Such Microsoft-related components are, for example, the software components that perform the authentication functionality claimed in the patents-in-suit, the software components that query Microsoft servers (e.g., Skype, Lync, Skype for Business, Xbox Live, etc.) to perform arbitration of computer connections, the software components comprising Microsoft's internal APIs and APIs for application developers, the software components that perform the multiplexing and demultiplexing of messages, and the software components that install Microsoft's Accused Instrumentalities on a computer or server.

38. As outlined in paragraphs 24-26 and 33, in the above offering to sell and/or selling, Microsoft has known these Microsoft-related components to be especially made or especially adapted for use in an infringement of the patents-in-suit and are not a staple article or commodity of commerce suitable for substantial non-infringing use. Alternatively, Microsoft believed there was a high probability that others would infringe the patents-in-suit but remained willfully blind to the infringing nature of others' actions. Microsoft therefore infringes the patents-in-suit under 35 U.S.C. § 271(c).

39. Microsoft's acts of infringement have caused damage to Windy City. Windy

City is entitled to recover from Microsoft the damages sustained by Windy City as a result of Microsoft's wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Microsoft have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Windy City for which there is no adequate remedy at law, and for which Windy City is entitled to injunctive relief under 35 U.S.C. § 283.

40. As outlined in paragraphs 24-26 and 33, Microsoft has received actual notice of its infringement prior to this lawsuit, including at least through its discussions with Plaintiff regarding licensing Plaintiff's technology and the citation of Plaintiff's patents against Microsoft's patent applications.

41. Microsoft has committed and continues to commit acts of infringement under 35 U.S.C. § 271 with Microsoft's Accused Instrumentalities. In committing these acts of infringement, Microsoft acted despite an objectively high likelihood that its actions constituted infringement of at least one valid claim of at least one patent-in-suit, and as outlined in paragraphs 24-26 and 33, Microsoft actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of at least one valid and enforceable patent.

42. Microsoft's infringement of the patents-in-suit has been and continues to be willful.

43. To the extent that Microsoft releases any new version of Microsoft's Accused Instrumentalities, such instrumentalities meet the claims of the patents-in-suit and infringe 35 U.S.C. § 271(a)-(c) in ways analogous to Microsoft's current infringement described above.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

    1.    A judgment that Microsoft has directly infringed the patents-in-suit, contributorily infringed the patents-in-suit, and/or induced the infringement of the patents-in-suit;

    2.    A preliminary and permanent injunction preventing Microsoft and its officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with it, from directly infringing, contributorily infringing, and/or inducing the infringement of the patents-in-suit;

    3.    A judgment that Microsoft's infringement of the patents-in-suit has been willful;

    4.    A ruling that this case be found to be exceptional under 35 U.S.C. § 285, and a judgment awarding to Plaintiff its attorneys' fees incurred in prosecuting this action;

    5.    A judgment and order requiring Microsoft to pay Plaintiff damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of final judgment, with an accounting, as needed, and enhanced damages for willful infringement as provided by 35 U.S.C. § 284;

    6.    A judgment and order requiring Microsoft to pay Plaintiff the costs of this action (including all disbursements);

    7.    A judgment and order requiring Microsoft to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

8. A judgment and order requiring that in the event a permanent injunction preventing future acts of infringement is not granted, that Plaintiff be awarded a compulsory ongoing licensing fee; and

9. Such other and further relief as the Court may deem just and proper.

Dated: June 2, 2015

Respectfully submitted,

s/Philip S. Anderson
N.C. Bar Nº 21323
s/Robert B. Long, Jr.
N.C. Bar Nº 2787
Long, Parker, Warren, Anderson & Payne, P.A.
14 South Pack Square, Suite 600
Asheville, North Carolina  28801
Telephone:  828/258-2296
Fax:  828/253-1073
email:  philip@longparker.com
email:  fran@longparker.com


**CALDWELL CASSADY & CURRY**

*/s/ Bradley W. Caldwell*
Bradley W. Caldwell
Texas State Bar No. 24040630
*(Pro Hac Vice Motion to be filed)*
Email:  bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
*(Pro Hac Vice Motion to be filed)*
Email:  jcassady@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
*(Pro Hac Vice Motion to be filed)*
Email:  acurry@caldwellcc.com
Warren J. McCarty
Illinois State Bar No. 6313452
Email:  wmccarty@caldwellcc.com
*(Pro Hac Vice Motion to be filed)*
**CALDWELL CASSADY & CURRY**
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

**ATTORNEYS FOR PLAINTIFF
WINDY CITY INNOVATIONS, LLC**